CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

FILED
Aug 19 2026
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SUDHEESH RAGHAVAN NAMBIAR,<br><br>Defendant. | CASE NO. CR 26-00405-NW (NC)<br><br>VIOLATIONS:<br>18 U.S.C. § 1343 – Wire Fraud;<br>18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity;<br>18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and (b)(1) and 28 U.S.C. § 2461(c) – Forfeiture Allegation<br><br>SAN JOSE VENUE |

# INFORMATION

The United States Attorney charges:

## Relevant Individuals and Entities

1. Defendant SUDHEESH RAGHAVAN NAMBIAR was a resident of Milpitas, California, within the Northern District of California.

2. Spartan Trading Inc. and Spartan Trading Capital Fund were purported entities NAMBIAR described to investors as his investment ventures and which he used to raise investments.

3. NAMBIAR controlled accounts with several banks, including Chase Bank, Axos Bank, and Bank of America. NAMBIAR opened these accounts in his name and listed his address as his residence in Milpitas, California.

//

4. Investor 1 was an individual residing in Sunnyvale, California, until early 2021, and then in Cupertino, California, from early 2021 through 2024. Both Sunnyvale and Cupertino are in the Northern District of California. Investor 1 made a series of investments with NAMBIAR from in or about 2019 through in or about 2023, totaling approximately $2.1 million.

5. Investor 2 was an individual residing in Frisco, Texas. Investor 2 invested approximately $700,000 with NAMBIAR over the course of a series of investments between in or about July 2021 and in or about April 2024.

THE SCHEME AND ARTIFICE TO DEFRAUD

6. Beginning on a date unknown but no later than January 2019 through in or about May 2024, NAMBIAR, individually and acting through entities, including Spartan Trading Inc. and Spartan Trading Capital Fund, engaged in a scheme, plan, and artifice to defraud investors as to a material matter, to obtain money and property by means of materially false, fraudulent, and misleading pretenses, representations, and promises, and by making materially false, fraudulent, and misleading statements, and failing to disclose material facts with a duty to disclose.

7. Beginning no later than January 2019, NAMBIAR made materially false, fraudulent, and misleading statements to investors and failed to disclose material facts with a duty to disclose, using, among other things: (1) false and misleading written and verbal communications; (2) false and misleading financial statements, summaries, and other information; and (3) false and misleading representations in Telegram group chats and channels.

8. As part of the fraud scheme, NAMBIAR represented to investors his success trading securities, including options contracts, told investors he had, and would continue to make, at least 25 percent annual returns, and provided periodic updates to investors about his positive trading performance with respect to particular securities and particular time periods. In truth, NAMBIAR knew and understood that his representations about his own investment performance were materially inflated and that NAMBIAR in fact consistently lost money on a monthly and annual basis trading in options and securities. For example, on or around December 29, 2022, NAMBIAR represented to members of a Telegram group chat that Spartan Trading saw a 32 percent gross gain in 2022. In fact, as NAMBIAR then knew, NAMBIAR's investments and stock trading accounts lost tens of millions of dollars that

year.

9. As part of the fraud scheme, NAMBIAR represented that he managed investor risk by pooling investor capital and not deploying all of it for investing in securities. In truth, NAMBIAR knew and understood that he engaged in high-risk margin trades and funded his investment activity in part through millions of dollars in loans from cash-advance companies in addition to funds from investors.

10. As part of the fraud scheme, NAMBIAR raised additional funds from investors by promising the funds would be used in connection with bridge loans relating to real estate transactions. In truth, NAMBIAR did not actually use money for that purpose. Similarly, NAMBIAR told investors he needed to raise money to address an Internal Revenue Service audit, when, in truth, NAMBIAR knew and understood that no such audit existed at the time.

11. As part of the fraud scheme, NAMBIAR generated falsified statements and other documents intending to deceive existing investors to believe their investments had made profits, and to cause investors not to seek immediate redemptions and to invest additional money with NAMBIAR. NAMBIAR also perpetrated the scheme by using new investments to make distributions to earlier investors. For example, on or about December 8, 2022, Investor 2 wired NAMBIAR approximately $75,000 to a Chase bank account controlled by NAMBIAR. That same day, Nambiar transferred approximately $45,000 to another victim out of the account that Investor 2's investment had funded. Before Investor 2's investment, the account had a balance less than approximately $500.

12. Contrary to his representations to investors, NAMBIAR used money raised from investors for personal expenditures and living expenses.

13. After receiving false, fraudulent, and misleading statements, representations, promises, and omissions from NAMBIAR, Investors 1, 2, and others initiated electronic wire transfers for the purpose of investing money with NAMBIAR. These wires, one of which is specifically alleged in paragraph 16 of this Information, used the domestic electronic funds transfer system known as the Fedwire system, which is owned and operated by the United States Federal Reserve System. All Fedwire wire transfers alleged in this Information were electronically routed through Fedwire centers outside California. Each of the investor wire transfers described below constituted transmissions that started, passed through, or ended in the Northern District of California.

<u>COUNT ONE:</u> (18 U.S.C. § 1343 – Wire Fraud)

14. Paragraphs 1 through 13 of this Information are re-alleged and incorporated as if fully set forth here.

15. Beginning on a date unknown but no later than in or about January 2019 and continuing through in or about May 2024, in the Northern District of California and elsewhere, the defendant,

SUDHEESH RAGHAVAN NAMBIAR,

knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by means of omission and concealment of material facts.

16. On or about the dates set forth below, for the purpose of executing the aforementioned scheme and artifice to defraud and attempting to do so, in the Northern District of California and elsewhere, the defendant,

SUDHEESH RAGHAVAN NAMBIAR,

did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically, electronic fund transfers and payments as set forth below, on or about the dates and in the amounts set forth below:

| COUNT | DATES | APPROX. AMOUNT | WIRE TRANSMISSION |
|---|---|---|---|
| 1 | Nov. 12, 2021 | $290,000 | Fedwire transfer from Investor 1's Citibank bank account to Chase Bank account controlled by NAMBIAR |

All in violation of Title 18, United States Code, Section 1343.

<u>COUNT TWO</u>: (18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)

17. Paragraphs 1 through 13 of this Information are re-alleged and incorporated as if fully set forth here.

18. Among other transactions, on or about August 29, 2022, in the Northern District of California and elsewhere, the defendant,

SUDHEESH RAGHAVAN NAMBIAR,

did knowingly engage in a monetary transaction by, through, and to a financial institution, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, specifically, a wire transfer of $100,000 from NAMBIAR's Chase Bank to a First Republic Bank account shared by NAMBIAR and another individual, such funds having been derived from the specified unlawful activity of wire fraud, as alleged in this Information.

All in violation of Title 18, United States Code, Section 1957.

FORFEITURE ALLEGATION: (18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and 28 U.S.C. § 2461(c))

19. The allegations contained in this Information are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

20. Upon conviction for any of the offenses set forth in this Information, the defendant,

SUDHEESH RAGHAVAN NAMBIAR,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations.

21. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

//

//

//

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

22. All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

DATED: August 19, 2026

CRAIG H. MISSAKIAN
United States Attorney

PATRICK K. O'BRIEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys